JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of Orange County Coastkeeper, and ORANGE COUNTY COASTKEEPER, a California nonprofit public benefit corporation,<br><br>Plaintiffs,<br>v.<br><br>PRISM AEROSPACE, a California stock corporation,<br><br>Defendant. | Case No.: 8:26-cv-405-JVS(JDEx)<br><br>**CONSENT DECREE [31]** |

# CONSENT DECREE

**WHEREAS,** Orange County Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS,** the mission of Orange County Coastkeeper is to protect swimmable, drinkable, fishable water and promote watershed resilience throughout Orange County;

**WHEREAS**, Inland Empire Waterkeeper is a program of Orange County Coastkeeper (collectively, "Waterkeeper");

**WHEREAS**, Prism Aerospace owns and operates a facility at 3087 12th Street, Riverside, CA 92507 (the "Facility");

**WHEREAS**, Mad Atom LLC ("Mad Atom") owns the land upon which the Facility operates;

**WHEREAS**, the Facility is in the business of fabricating airplane parts consisting of primarily aluminum metal. The Facility specializes in sheet metal forming, precision machining, special processing, kitting, and complete assemblies;

**WHEREAS**, industrial activities occurring at the Facility include fabrication, loading/unloading, truck traffic, storage, cutting aluminum, grinding aluminum, bending aluminum, and shaping aluminum;

**WHEREAS,** the Facility is categorized under Standard Industrial Classification ("SIC") Code 3728, Aircraft Parts and Auxiliary Equipment, not elsewhere classified;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on December 23, 2025, Waterkeeper sent a notice of intent to file suit ("60-Day Notice") to Prism Aerospace, Mad Atom, their registered agents for service of process, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ at the Facility;

**WHEREAS**, on February 23, 2026, Waterkeeper filed a complaint against Prism Aerospace ("Defendant") and Mad Atom in the Central District of California, Civil Case No. 8:26-cv-405 (the "Complaint");

**WHEREAS**, Plaintiffs' Complaint alleged violations of the General Permit and the Clean Water Act for the Facility's discharges of pollutants into storm drains and surface waters, including the Riverside Canal, which discharges to the Santa Ana River, which discharges into the Pacific Ocean (collectively, the "Receiving Waters");

**WHEREAS**, Waterkeeper and Defendant Prism Aerospace (together, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, on August 18, 2026, Waterkeeper and Prism Aerospace agreed to settlement terms in a consent decree but could not file the consent decree due to Defendant's inability to contact Mad Atom;

**WHEREAS**, on September 3, 2026, in the mutual interest of time and efficiency, Waterkeeper, Prism Aerospace, and Mad Atom filed a joint stipulation and proposed order to voluntarily dismiss Mad Atom without prejudice;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8. Agency Review. Waterkeeper shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Agency Review Period").

9. Court Notice. Waterkeeper shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. Entry of Consent Decree. Promptly following the expiration of the Agency Review Period, Waterkeeper shall submit the Consent Decree to the Court for entry.

### B. DEFINITIONS

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a. "BAT/BCT" means the Best Available Technology Economically Achievable or Best Conventional Treatment Technology.

b. "BMPs" means Best Management Practices.

c. "Advanced Treatment" means treatment utilizing polymer- or electrostatically-assisted filtration or technology equivalent in

performance, designed in accordance with General Permit Section X.H.6

d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e. "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f. "Discharge Point" means each outfall and discharge location designated in the SWPPP for the Facility.

g. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A of the General Permit.

j. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

k. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

l. "SWPPP" means a Storm Water Pollution Prevention Plan.

m. "Term" means the period between the Effective Date and the "Termination Date."

n. "Termination Date" means the latest of:

i. Three (3) years from the Effective Date, unless there is an ongoing, unresolved formal dispute regarding Defendant's compliance with this Consent Decree;

ii. If there is an ongoing, unresolved formal dispute regarding Defendant's compliance with this Consent Decree, the Consent Decree will terminate within seven (7) days following the earlier of: (1) notice by the Settling Party that invoked Dispute Resolution procedure that the dispute has been fully resolved, or (2) an order of the Court resolving the dispute;

iii. Notwithstanding the above, if the Regional Board approves a Notice of Termination submitted for the Facility pursuant to Section 2.C of the General Permit, the Termination Date shall be the later of: (1) the date of the Regional Board's Approval of the Notice of Termination for the Facility, or (2) seven (7) calendar days from Defendant's completion of all payments required by this Settlement Agreement.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12. Non-Storm Water Discharge Prohibition: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13. Current and Additional Best Management Practices: In addition to maintaining the current BMPs described in the Facility's SWPPP, Prism Aerospace shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Prism Aerospace shall develop and

implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14. Structural and Non-Structural BMPs for the Facility:

(1) Within thirty (30) days of the Effective Date, Prism Aerospace shall develop and implement the following BMPs at the Facility and incorporate them in its SWPPP:

a. Move all metals stored outdoors under canopies or indoors.

b. Place all dumpsters under canopies or fit them with covers and keep them covered when not being loaded or unloaded.

c. Obtain a vacuum sweeper for inside cleaning with a HEPA filter. Retain existing outside sweeper, and continue to sweep all accessible outdoor areas daily.

d. Manually sweep all areas inaccessible to the sweeper weekly and during the last work shift before a Forecasted Rain Event.

e. Install floor mats or equivalent for chip containment for forklifts on all exits.

f. Incorporate and institute a pre-rain protocol before a Forecasted Rain Event.

(2) Within one hundred twenty (120) days of the Effective Date, Prism Aerospace shall file a permit to receive government approval and within ninety (90) days of receiving government approval, Prism Aerospace shall develop and implement the following BMP at the Facility and incorporate it in its SWPPP::

a. Install a ground gutter system to re-route stormwater and eliminate discharge sampling point #5.

15. Reporting: Withing fourteen (14) days of completion of the BMPs identified in Paragraph 14, Prism Aerospace will provide Waterkeeper with written

confirmation of completion, including photographs sufficient to show implementation of structural BMPs.

### B. SAMPLING AT THE FACILITY

16. Frequency: During the Term, Prism Aerospace shall collect samples of storm water discharge from each Discharge Point(s) during no fewer than four (4) Qualifying Storm Events ("QSEs") per Reporting Year, provided four (4) QSEs occur. Prism Aerospace shall sample at least two (2) QSEs during each half of the Reporting Year. If Prism Aerospace is unable to collect samples from at two (2) QSEs during the first half of the reporting year (i.e., by December 31), it shall make every effort to collect all four (4) samples in the second half of the reporting year.

17. Documentation. To document the storm water discharge and discharge location, an employee shall take photographs of the storm water discharge and discharge location when samples are collected (the "Sampling Photographs").

18. Rain Gauge. Prism Aerospace has already installed and shall maintain a recording rain gauge capable of recording rainfall to 0.1 inches on an hourly basis in accordance with the manufacturers' recommendations, and records of all maintenance and rain data. Prism Aerospace shall provide such rain gauge data to Waterkeeper upon a request for documentation made pursuant to Paragraph 28.

19. Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

20. Laboratory and Holding Time: Except for pH samples, Prism Aerospace shall cause delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument for pH as instructed by and calibrated using the manufacturer's instructions.

21. Detection Limit: Prism Aerospace shall request the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

22. Reporting: Prism Aerospace shall provide complete laboratory results of all samples collected at the Facility to the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System in accordance with the General Permit, and shall provide copies to Waterkeeper within thirty (30) days of receiving the final laboratory report with the results.

### C. REDUCTION OF POLLUTANTS IN DISCHARGES

23. Table 1 Numeric Limits: Prism Aerospace shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| pH | 6.5 - 8.5 | Basin Plan |
| Total Suspended Solids (TSS) | 100 mg/L | Permit NAL |
| Oil and Grease (O&G) | 15 mg/L | Permit NAL |
| Zinc (Zn) | 0.26 mg/L | Permit NAL |
| Aluminum (Al) | 0.75 mg/L | Permit NAL |
| Iron (Fe) | 1 mg/L | Permit NAL |
| Nitrate & Nitrite Nitrogen (N+N) | 0.68 mg/L | Permit NAL |
| Dissolved Zn | 0.305 mg/L* | Basin Plan |

*Value dependent on hardness Santa Ana River, Reach 3, Basin Plan objective (350 mg/L CaCO3).

24. Action Plan Trigger: The action plan requirements set forth in this paragraph shall be triggered upon the occurrences of any of the following events: (1) Consistent with General Permit § XII.A.1, where the average concentration of any pollutant in storm water samples during a reporting year from the Facility with an annual limit exceeds any numeric annual NAL limit contained in Table 1, or (2) three (3) exceedances of any combination of pollutants from any outfall during a Reporting Year.

25. Action Plan Requirement: If Prism Aerospace triggers an Action Plan as described in Paragraph 24, Prism Aerospace shall prepare and submit to Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). Only one Action Plan per year is required. The complete Action Plan shall be submitted to Waterkeeper by July 31 of each full year of the Term, as applicable.

a. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance and/or applicable limit; (3) the identification of additional BMPs[1] that shall be implemented to achieve compliance with Table 1 Value(s); and (4) time schedules for implementation of the proposed BMPs. The first Action Plan that Prism Aerospace triggers shall consider if stormwater could be captured and reused at the Facility by analyzing: (1) if stormwater can be isolated and brought to a single discharge point; (2) the quantity of water available; and (3) the quality of water that is being captured. If Prism Aerospace triggers a second Action Plan, Prism Aerospace shall include a plan for installing Advanced Treatment.[2]

b. Action Plan Review: Waterkeeper shall have thirty (30) days upon receipt of Prism Aerospace's complete Action Plan to provide Prism Aerospace with comments. Within fourteen (14) days of

[1] Identification of additional BMPs shall include, but are not limited to, one or more of the following options: (1) replace metal building stormwter gutters at the Facility with non-metal gutters; (2) stage and complete multiple events to process and fully coat all Facility steel and aluminum racks exposed to stormwater; and (3) institute a long-term process to enclose all existing awning spaces to reduce existing manufacturing interface with outdoor areas to controlled ingress and egress locations.

[2] If the installation of Advanced Treatment requires Prism Aerospace to obtain government approval through permits, Prism Aerospace may evaluate their stormwater results before government approval is obtained. If there are no Table 1 exceedances at the time of receiving government approval, Prism Aerospace will not be required to install Advanced Treatment.

receiving Waterkeeper's proposed revisions to an Action Plan, Prism Aerospace shall consider each of Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

c. Prism Aerospace shall revise the Facility's SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Prism Aerospace shall notify Waterkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Waterkeeper for review and comment.

d. Action Plan Payments: Prism Aerospace shall pay Five Thousand Dollars ($5,000) each time an Action Plan is submitted to Waterkeeper at the same time that the Action Plan is submitted. Payments shall be made to "Orange County Coastkeeper" via certified mail or overnight carrier to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

### D. Visual Observations

26. Storm Water Discharge Observations: During the Term, appropriately trained staff shall conduct visual observations during each QSE that is sampled in accordance with Section XI.A.2 of the General Permit.

27. Monthly Visual Observations: During the Term, appropriately trained staff shall conduct monthly non-storm water visual observations in accordance with Section XI.A.1 of the General Permit.

### E. Maintaining Records and Record Requests

28. Prism Aerospace shall maintain records, which may include photographs, to document compliance with all terms of this Consent Decree, including, but not limited to Paragraphs 14, 18, 26, 27, and 31. Waterkeeper can request a copy of these records in writing, and the Facility shall provide Waterkeeper with a copy of such requested records within fourteen (14) days of receipt of a written request from Waterkeeper for those records.

### F. Employee Training

29. Within thirty (30) days of the finalized SWPPP, Prism Aerospace shall develop and implement an employee training program that meets the following requirements by using either persons trained by a QISP and/or by persons trained by the QISP ("Designated Trainers"). The training program shall address the General Permit and this Consent Decree and ensure: (1) that there is a sufficient number of employees working at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"); (2) such Designated Employees are properly trained by Designated Trainers to perform the required activities to maintain compliance with the General Permit, the Facility's SWPPP, and this Consent Decree; and (3) all full-time regular (non-temporary) non-clerical employees at the Facility (hereinafter referenced as "ALL Employees") receive basic information regarding housekeeping and storm water best management practices (the "Training Program").

30. Employee Training covering the General Permit and Consent Decree shall at a minimum, include:

a. Non-Storm Water Discharges. All Designated Employees shall be trained on the General Permit's prohibition of non-storm water discharges.

b. The SWPPP and BMPs. All Designated Employees shall be trained on the SWPPP and, specifically, BMP implementation and/or maintenance, operational procedures and control measures as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water and prevent the discharge of contaminated storm water from the Facility.

c. Visual Observation and Storm Water Sampling. Prism Aerospace shall designate and train an adequate number of Designated Employees necessary to (1) conduct visual monitoring; and (2) collect storm water samples. Its sample collection training shall include: (i) properly following at all time chain of custody requirements and sampling protocols; and (ii) properly collecting, storing, and submitting storm water samples to a certified laboratory.

d. Training Implementation. Training of Designated Trainers shall be provided by the QISP.

e. Training Program Frequency – Designated Employees. The Training Program shall be repeated annually or more frequently as necessary for all Designated Employees, including before assuming responsibilities under the General Permit or this Consent Decree.

f. All Employee Training Program. ALL Employees, including new employees (as part of initial orientation), shall receive basic training and information regarding housekeeping and storm water best

management practices to comply with this Consent Decree and the General Permit.

g. Language. The Training Program shall be conducted, and all training materials shall be made available, in the language in which the employee(s) participating in the Training Program are fluent, which are English and Spanish. Prism Aerospace shall provide translation services at all training sessions.

31. Training Records. Prism Aerospace shall maintain training records to document compliance with this section, including sign-in sheets documents which employees were trained, and shall provide Waterkeeper with a copy of such records if requested in accordance with Paragraph 28.

**G. STORM WATER POLLUTION PREVENTION PLAN**

32. SWPPP. Within thirty (30) days of the Effective Date, Prism Aerospace shall amend the Facility's SWPPP to incorporate the requirements of the General Permit and this Consent Decree.

33. Revising the SWPPP. Prism Aerospace shall revise the Facility's SWPPP if there are any significant changes in the Facility's operations, including but not limited to changes to storm water Discharge Point(s) or significant changes/additions to the BMPs at the Facility, within thirty (30) days of the occurrence of any of the above-listed events.

34. Commenting on Revised SWPPPs. Prism Aerospace shall submit each revised SWPPP to Waterkeeper for review and comment within thirty (30) days of its completion. Waterkeeper shall provide comments, if any, to Prism Aerospace within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Prism Aerospace's comments on the SWPPP, Prism Aerospace shall accept and incorporate Waterkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Prism Aerospace's failure to incorporate Waterkeeper's comments shall be resolved

pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

### H. COMPLIANCE MONITORING AND REPORTING

35. Waterkeeper may conduct up to one (1) site inspection ("Site Inspection") per Reporting Year for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Waterkeeper's request. Waterkeeper shall not unreasonably request, and Defendant shall not unreasonably deny, the additional Site Inspection. Any Site Inspection shall occur during normal business hours, and Waterkeeper will provide Prism Aerospace with at least forty-eight (48) hours' notice before a Site Inspection. For any Site Inspection requested to occur in wet weather, Waterkeeper shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 62. During the wet weather inspection, Waterkeeper may request that Prism Aerospace collect a sample of industrial storm water discharge from the Facility's designated industrial Discharge Point(s), to the extent that such discharges are occurring. Prism Aerospace shall collect the sample and provide a split sample to Waterkeeper. Waterkeeper's representative(s) may observe the split sample(s) being collected by Prism Aerospace's representative. Subject to any business confidential or trade secret concerns, Waterkeeper shall be permitted to take photographs or video recordings during any Site Inspection.

36. <u>Document Provision</u>. During the Term, Prism Aerospace shall notify and submit documents to Waterkeeper as follows:

a. Prism Aerospace shall copy Waterkeeper on all compliance documents, monitoring and/or sampling data, written

communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

b. Within seven (7) business days of receipt by Defendant, Prism Aerospace shall send Waterkeeper any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Prism Aerospace from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Prism Aerospace shall mail paper copies or email electronic copies of documents to Waterkeeper at the relevant notice address contained below.

37. Compliance Monitoring. Defendant agrees to partially defray costs associated with Waterkeeper's monitoring of Defendant's compliance with this Consent Decree Forty Thousand Dollars ($40,000) until the Termination Date. In the event this Consent Decree extends beyond the Termination Date, Defendant shall reimburse Waterkeeper an additional not to exceed Twenty Thousand Dollars ($20,000) per Reporting Year that the Consent Decree remains in effect.

38. Payment shall be made within thirty (30) days of the Entry Date and, should the Term extend beyond three (3) years, as applicable. The payment shall be made via check, made payable to: "Orange County Coastkeeper" via certified mail or overnight carrier to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made by wire transfer. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

## I. Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest

39. Environmental Mitigation Project: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in and around the Riverside Canal and the Santa Ana River, Defendant agrees to make a payment totaling Thirty Thousand Dollars ($30,000.00) to the Rose Foundation made within thirty (30) days of the Entry Date, payable to the Rose Foundation and sent via overnight carrier to: 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

40. Waterkeeper's Fees and Costs: Defendant agrees to pay a total of Eighty-Five Thousand Dollars ($85,000.00) to Waterkeeper to partially reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to "Orange County Coastkeeper" and delivered by certified or overnight carrier to: Orange County Coastkeeper, 3151 Airway Ave., Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

41. Stipulated Payment. In the event that Defendant fails to submit to Waterkeeper any payment, document, report, or communication required by this Consent Decree, Waterkeeper shall provide written notice to the Facility of such missed deadline. The Facility shall have five (5) business days from receipt of such notice to respond to Waterkeeper, and if necessary, cure such delinquency. If the Facility fails to respond and, if necessary, cure such alleged delinquency within five (5) business days of receipt of Waterkeeper's notice, then Defendant shall pay a stipulated payment of One Hundred Dollars ($100). Such stipulated payments shall be made by check

payable to: The Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607 and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 39. Payment shall be sent via overnight carrier to the party described in Paragraph 40. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV. DISPUTE RESOLUTION

42. This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

43. Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

44. Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 43 above, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion. If the parties do not wish to request a conference with a magistrate, they may request a settlement conference.

45. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d),

and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

46. Waterkeeper's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its officers and directors, release Defendant, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

47. Defendant's Waiver and Release of Waterkeeper. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Waterkeeper, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

## VI. MISCELLANEOUS PROVISIONS

48. No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Facility maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

49. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

50. Authority. The undersigned representatives for Waterkeeper and Defendant certifies that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

51. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

52. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

53. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

55. Contingency on Dismissal. This Consent Decree is expressly contingent upon and shall only become effective and binding following the Court's entry of an order granting the dismissal without prejudice of Defendant Mad Atom, LLC, from this action.

56. Choice of Law. The laws of the United States shall govern this Consent Decree.

57. Diligence: Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

58. Effect of Consent Decree: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

59. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

60. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

61. Assignment. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event Defendant's transferee or assign ("Assignee") will continue industrial operations at the Facility, Defendant shall notify Waterkeeper ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, the Facility will provide Waterkeeper with a written assignment and assumption duly executed by the Facility and the Assignee assigning the Facility's obligations under this Consent Decree to the Assignee.

62. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public

health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

63. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Waterkeeper:
Davina Shoumer
Email: davina@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

With copies to:
Sarah Spinuzzi
Email: sarah@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

If to the Facility:
Umesh Lad
Email: umesh@prismaerospace.com
Prism Aerospace
3087 12th Street
Riverside, CA 92507
Phone: (951) 582-2850

With copies to:
Charles Pomeroy
Email: cpomeroy@stilespomeroy.com
StilesPomeroy LLP
150 N. Santa Anita Ave., Ste. 300
Arcadia, CA 91006
Phone: (626) 243-5599

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

64. If for any reason the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: September 3, 2026

By: Garry Brown
Garry Brown
Executive Director
Orange County Coastkeeper
Inland Empire Waterkeeper

Dated: Sept 3rd 2026

By: ______
Umesh Lad
Chief Financial Officer
Prism Aerospace

APPROVED AS TO FORM

Dated: September 3, 2026

By: Davina Shoumer
Davina Shoumer
Attorney for Orange County Coastkeeper
Inland Empire Waterkeeper

Dated: September 3, 2026

By: Charles H. Pomeroy
Charles H. Pomeroy
Attorney for Prism Aerospace

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between Waterkeeper and the Facility.

Dated: October 20, 2026

Honorable James V. Selna
United States District Judge
Central District of California